UNITED STATES of America, Appellee,

v.

Marvin Jesse MANUEL, Appellant.

No. 89–2965.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1990.

Decided Aug. 16, 1990.

Evans Benton, Little Rock, Ark., for appellant.

Lesa Bridges Jackson, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Marvin Jesse Manuel appeals from the sentence imposed by the district court after he pleaded guilty to a two-count substituted information charging him with forgery in violation of 18 U.S.C. § 510(a)(1) (1988) and possession of stolen mail in violation of 18 U.S.C. § 1708 (1988). At sentencing, the district court, over Manuel's objection, adopted the factual findings in Manuel's Presentence Report. The report set Manuel's total base offense level under the Sentencing Guidelines at thirteen. The court, without explanation, accepted the recommendation of the Presentence Report and sentenced him to twenty-one months in prison, the maximum allowed under the Guidelines, and to three years of supervised release. Manuel argues that the court erred in: (1) applying the criminal

livelihood Guideline, section 4B1.3; (2) applying a base offense level of twelve under Guideline section 2F1.1; and (3) enhancing his offense level under Guideline section 3B1.1 for being an organizer, manager or leader. For the reasons set out below, while we affirm some of the findings of the district court in sentencing, we must reverse other findings, including the base offense level, and remand this case for resentencing consistent with this opinion.

Manuel was originally charged in a sixteen-count indictment alleging forgery and possession of stolen mail. After reaching a plea agreement, Manuel pleaded guilty to a substituted two-count information, which charged him with having illegally possessed, forged, or uttered five United States Treasury instruments with a total value of $3,307. The district court rejected Manuel's objections to the denial of two-point reduction for acceptance of responsibility, Guideline section 3E1.1, and to the addition of two points for serving as organizer, leader, manager, or supervisor in the offense, Guideline section 3B1.1(c). At the sentencing hearing, the district court found that "he certainly was the leader." (Tr. 31). The court then adopted the findings of the Presentence Report which set Manuel's base offense level of twelve, added one point for the amount of the loss involved, Guideline section 2F1.1(b)(1)(B),[1] and added two more points for Manuel's leading role in the offense, Guideline section 3B1.1(c), and concluded that Manuel's total offense level was thirteen.

Patent errors were made in computing Manuel's offense level. If the conditions existed in this case as found by the court, then Manuel's base offense level would have to have been at least fifteen.[2] After reviewing the record in this case, we not only conclude that mathematical errors occurred in sentencing Manuel, but also find that several Guidelines were misapplied.

### I.

▆▆▆ Manuel first argues that the court improperly set his base offense level at twelve under Guideline section 2F1.1. We are unable to fathom the justification for this offense level from the Presentence Report, and the government's arguments have not given us sufficient illumination for us to do so. Manuel was involved in stealing and forging United States Treasury instruments from October 2, 1987, through December 14, 1988. Manuel pleaded guilty to forgery, 18 U.S.C. § 510(a)(1), and possession of stolen mail, 18 U.S.C. § 1708, as a result of his conduct during that time. Guideline section 2F1.1 is applicable for crimes under 18 U.S.C. § 510(a)(1) and carries a base offense level of six, U.S.S.G. § 2F1.1(a), while Guideline section 2B1.1 is applicable for crimes under 18 U.S.C. § 1708 and carries a base offense level of four, U.S.S.G. § 2B1.1(a). When closely related counts, such as these, are grouped, the sentencing court is directed to use the highest offense level of the counts as the base offense level. *See* U.S.S.G. §§ 3D1.2(d), 3D1.3(b). Since the issue of grouping offenses "involves a legal interpretation of guidelines terminology and the application of that terminology to a particular set of facts, we review de novo." *United States v. Toler,* 901 F.2d 399, 402 (4th Cir.1990); *see United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989).

Guideline section 3D1.2(d) specifically lists Guidelines sections 2F1.1 and 2B1.1 as offenses that can be grouped together. U.S.S.G. § 3D1.2(d). In light of the fact that these two counts both arose out of Manuel's theft of United States Treasury instruments, we believe that the counts are sufficiently linked to merit being grouped

---

1. The Presentence Report cites Guideline section 2F1.1(b)(1)(A) for the basis of a one point enhancement, that specific section concerns crimes involving less than $2,000. The report apparently meant to cite section 2F1.1(b)(1)(B) for the basis of the enhancement.

2. Base offense level of twelve under the court's reading of Guideline section 2F1.1, plus one point under Guideline section 2F1.1(b)(1)(B), plus two points under Guideline section 3B1.1(c), equals fifteen. If this was the case, the court's determination concerning the applicability of Guideline section 4B1.3 would have been superfluous because Manuel's base offense level would have exceeded thirteen.

together for the purposes of section 3D1.- 2(d). We believe Manuel's base offense level should have been six, U.S.S.G. § 2F1.1(a), the higher of the two applicable base offense levels, and not twelve as recommended by his Presentence Report and adopted by the district court. It is, however, for the district court on remand to determine the proper base offense level.

■■■ The government also argues that Manuel's base offense level should be enhanced under Guideline section 2F1.1(b)(2) to level ten, because the offense involved more than minimal planning, citing the conclusion reached by the probation officer in the Presentence Report. We have searched the Presentence Report in vain for such a statement. The specific findings of the district court make no mention of this factor and the government has cited no page citation to the nineteen-page Presentence Report to substantiate this assertion. We may not rely upon that which the record does not demonstrate was before the district court. The government, attempting to sustain the sentence, argued that as the offenses occurred between October 10, 1987 and December 1988, the June 15, 1988 Sentencing Guidelines apply. Manuel was sentenced on November 21, 1989 and, accordingly, amendments to the Guidelines effective November 1, 1989 are applicable. The applicable statute, 18 U.S.C. § 3553(a) (1988), is in direct opposition. "The court, in determining the particular sentence to be imposed, shall consider —.... (4) the kinds of sentence and the sentencing range ... that are in effect on the date the defendant is sentenced...." *Id.* Manuel was sentenced on November 21, 1989.

### II.

■■■ Next, Manuel argues that the court erred in enhancing his offense level by two points for a leadership role under Guideline section 3B1.1(c). Manuel argues that there was insufficient evidence to support the enhancement of his sentence under section 3B1.1(c). We have recognized a broad definition of what constitutes a "leadership and organizational role."

*United States v. Collar,* 904 F.2d 441, 442 (8th Cir.1990). Furthermore, we consider district court determinations concerning the roles played by defendants to be factual findings and thereby accept them unless they are deemed to be clearly erroneous. *Id.*

Manuel contends that the court's determination that he played a leadership role is erroneous because it is based upon double hearsay. At Manuel's sentencing hearing, Probation Officer Cathy Davenport testified, over Manuel's objection, that Manuel "obtained the checks and took them to other individuals to have them assist him in having the checks cashed." (Tr. 8). Davenport also stated that Nickolette Johnson and another individual, identified in the Presentence Report as Larry Nelson, received stolen United States Treasury instruments from Manuel. (Tr. 8–9). Manuel argues that Nelson's testimony concerning Johnson's statements are double hearsay, Davenport testifying to what Johnson told a Secret Service Agent. Davenport testified, however, that she also "had occasion to interview [Johnson] personally, and she made these same statements to me as well." (Tr. 9). Therefore, we do not see Johnson's statement as double hearsay. Manuel also argues that Davenport's testimony concerning the "other individual," Nelson, was improper because Nelson's name did not appear anywhere in the record.

■■■ In light of the fact that the sentencing judge must consider all relevant factors in a case, "[i]t is appropriate to rely on hearsay at sentencing because the sentencing process requires 'the fullest information possible concerning the defendant's life and characteristics.'" *United States v. Agyemang,* 876 F.2d 1264, 1271 (7th Cir.1989) (quoting *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). Moreover, "[t]here is also a practical reason for allowing hearsay: given the breadth of information properly allowable at a sentencing hearing, not allowing the court to consider hearsay could turn the sentencing hearing 'into an endless parade of witnesses....'" *Id.*

(quoting *United States v. Harris*, 558 F.2d 366, 377 (7th Cir.1977) (Holder, J., concurring in part and dissenting in part)). For hearsay to be utilized by a sentencing court, the defendant must be given a reasonable opportunity to rebut it and it must be reliable, *id.* at 1272, and that even "[u]ncorroborated hearsay evidence contained in a presentence report may be considered by the sentencer provided the persons sentenced are given an opportunity to explain or rebut the evidence," *United States v. Evans*, 891 F.2d 686, 688 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990).

Manuel had ample opportunity to cross-examine Davenport, (Tr. 12), and testified himself, (Tr. 18). Therefore, we conclude that Manuel was "given ample opportunity to explain or rebut the evidence," *id.*, and that the court's enhancement of Manuel's offense level under section 3B1.1(c) was not clearly erroneous.

### III.

 Finally, Manuel argues that Guideline section 4B1.3, concerning criminal livelihood, was not applicable to his case because of our opinion in *United States v. Nolder*, 887 F.2d 140 (8th Cir.1989). In *Nolder,* we held that for section 4B1.3 to be applicable a defendant must earn more than the federal minimum wage, $6,700, over the course of a year from his criminal activity. *Id.* at 142. The government concedes the point and admits there was no evidence in Manuel's case to suggest that he profited more than the $3,747, the amount listed in the original indictment, from the crimes at issues here. Accordingly, we conclude that the district court erred in finding section 4B1.3 applicable in Manuel's case.

### IV.

It is unfortunate that errors were made in the preparation of the Presentence Report, which was adopted by the court as factual findings on which the sentence was based. Upon remand,[3] the court may order

that the Presentence Report be corrected or make the necessary corrections in the order that is entered. We affirm the ruling of the court enhancing the offense level for a leadership or organizational role, but reverse the court's findings concerning Manuel's base offense level and the criminal livelihood provision, and we remand the case for resentencing consistent with this opinion.

---

3. Any such correction should, however, be limited to the issues specifically addressed in Manuel's Presentence Report at the time of his sentencing.