**UNITED STATES of America, Plaintiff,**

**v.**

**Jon Michael VASTELICA, Defendant.**

**No. LR–CR–89–103.**

United States District Court,
E.D. Arkansas, W.D.

Nov. 27, 1990.

---

804

Michael Johnson, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

William McArthur, Little Rock, Ark., for defendant.

## SENTENCING MEMORANDUM AND ORDER

EISELE, Chief Judge.

This Memorandum and Order supplements and elaborates upon the rulings and opinions announced by the Court during the sentencing hearing conducted November 20, 1990. On July 11, 1990, defendant pled guilty to a single count of a four count indictment. Count II, to which he pled, charged him with making false statements during the purchase of a firearm while released on a personal recognizance bond in connection with another federal offense. 18 U.S.C. §§ 922(a)(6), 3147. Because the offense occurred after November 1, 1987 this case is governed by the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984.

Defendant challenges, *inter alia*, the imposition of a higher sentence of imprisonment which would result from the application of new amendments to the Guidelines which became effective November 1, 1990. The Court has already addressed his other objections to the Pre–Sentence Report (PSR) at the Sentencing Hearing. He contends that such an application violates the *Ex Post Facto* Clause of the United States Constitution and may not be used in his sentencing. Art. I, § 9, clause 3.

The United States Probation Office prepared a PSR on October 15, 1990 and determined that defendant's base offense level was 15. Since sentencing was scheduled for November 20, 1990, the Guideline Manual incorporating Guideline Section 2K2.1, "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition," provides, in subparagraph (a)(2), that the Base Offense Level be "12, ... if the defendant, at the time of the offense, had been convicted in any court of an offense punishable by imprisonment for a term exceeding one year."[1] In addition, because he was on release, Guideline § 2J1.7 increased his offense level by three, to 15. Under the appropriate criminal history category (Category III) defendant's sentencing range under the post-November 1990 guidelines was 24–30 months.

Under the version of the Guidelines which applied at the time defendant committed the offense, § 2K2.1 provided for a base offense level of 9. *See* Appendix C, Amendments to the Sentencing Guidelines Manual of October 1987, Amendment 189. The violation of 18 U.S.C. 3147 was covered under § 2J1.7 which provided for a base offense level of 6 and a Specific Offense Characteristic (b)(3), [which applied if the offense committed while on release was a felony punishable by over five years imprisonment,] raised the offense level four units to 10. The offenses were grouped separately and the highest offense level,

---

1. Defendant was sentenced for structuring cash transaction on December 7, 1988, a crime "punishable by imprisonment for a term exceeding one year."

10, resulted in a sentencing range of 10–16 months under Criminal History Category III. *See* U.S.S.G. §§ 3D1.3, 3D1.4.

The difference then, between a calculation of defendant's offense level under the guidelines in effect at the time the offense was committed as compared with the guidelines in effect at time of sentencing is dramatic: the sentencing range is more than doubled. Use of the current guidelines, defendant contends, amounts to a retroactive increase in the substantive penalty imposed, the very heart of the constitutional prohibition against the passage of *ex post facto* laws.

While the United States takes no position on this issue, it notes a case arising out of the Eastern District of Arkansas in which guidelines current at the time of sentencing were upheld in place of guidelines valid at the time the offense was committed. *United ed States v. Manuel,* 912 F.2d 204 (8th Cir.1990). That case is readily distinguishable, however, from the problem presented here.

In *Manuel,* the Government argued for the applicability of the guideline provision which applied at the time of the offense, committed between October 10, 1987 and December 1988. The guideline in question increased the base offense level by two units, reflecting that more than minimal planning was required for the commission of the crime. No statement in the PSR or by the trial court supported the enhancement. *Id.* at 207. Manuel was sentenced on November 21, 1989. The Court of Appeals, reversing the trial court, held that 18 U.S.C. 3553(a) mandated the application of the guidelines in effect at the date of sentencing and remanded for resentencing.[2] Plainly, the *ex post facto* clause is not implicated in *Manuel* and its import is in a related, though distinct vein of guideline application: if the *ex post facto* clause is found to have been violated here, a principle emerges of applying the guideline most favorable to the defendant. *See e.g. United ed States v. Marin,* 916 F.2d 1536 (11th Cir.1990) (district court erred by not applying Guidelines in effect at time of sentencing which would have afforded defendant a two level adjustment for acceptance of responsibility).

## THE *EX POST FACTO* CLAUSE

Congress is prohibited from passing "any *ex post facto* Law." United States Constitution, Art. I, § 9, cl. 3. Justice Chase gave meanings to this ancient proscription in *Calder v. Bull,* 3 U.S. 386, 1 L.Ed. 648, 3 Dall. 386 (1798):

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.* 3 Dall. at 390. [Citation omitted].

Two core requirements were distilled from this encyclopedic definition: to be subject to the prohibition against *ex post facto* laws, first, the law "must be retrospective, that is, it must apply to events occurring before its enactment;" and second, "it must disadvantage the offender affected by it." *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). A law operates retrospectively when it "changes the legal consequences of acts completed before its effective date." *Weaver, supra* at 31, 101 S.Ct. at 965.

But these two key elements, retroactivity and prejudice are not absolutes. Only where the law touches "a substantive personal right" instead of a "mode[ ] of procedure which do[es] not affect matters of

---

**2.** The statute states in relevant part: "[t]he court, in determining the particular sentence to be imposed, shall consider ... (4) the kinds of sentence and the sentencing range ... that are in effect on the date the defendant is sentenced."

substance" is the *ex post facto* prohibition triggered. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (quoted in *Miller*).

*Miller* involved an analogous situation to our own. Florida promulgated determinate sentencing guidelines for criminal offenses in 1983. These "guidelines," like the federal sentencing guidelines were designed to exorcise inordinate "variation" in criminal sentencings. Fla. Rules Crim.Proc. 3.701(b) (1983). Miller was convicted of one count of sexual battery with slight force, burglary with an assault and petit theft. Under the guidelines in effect at the time of his conviction, August, 1984, Miller's presumptive sentence was 5½ years for sexual battery, a felony.

Between conviction and sentencing, the Florida Legislature approved amendments to the guidelines. Sexual offenses, deemed to be the "primary" offenses in a multi-count sentencing, were inflated 20%. Instead of a 5½ year sentence, Miller's presumptive sentence became 7 years and the sentencing court so applied the amendments to his case. The Florida District Court of Appeals reversed and the Florida Supreme Court vacated the reversal and affirmed the higher sentence. The state high court concluded that the amendments were mere procedural changes which did not invoke the *ex post facto* clause.

The United States Supreme Court rejected this reading of the changes as procedural and found it to be an unambiguous *ex post facto* violation:

Although the distinction between substance and procedure might sometimes prove elusive, here the change at issue appears to have little about it that could be deemed procedural. The 20% increase in points for sexual offenses in no wise alters the method to be followed in determining the appropriate sentence; it simply inserts a larger number into the same equation.

*Miller*, 107 S.Ct. at 2453. And, rejecting Florida's argument that, similar to the United States Parole Commission's sentencing guidelines, upheld after *ex post facto* challenges, Florida's new presumptive sentence for Miller merely offered guidance to the sentencer, the Court's conclusion may be easily edited for use here:

First, the revised sentencing law is a law [enacted by Congress, not the Florida Legislature], and it has the force of law. Nor do the revised guidelines simply provide flexible "guideposts" for use in the exercise of discretion: instead, they create a high hurdle that must be cleared before discretion can be exercised ... Finally, the revised guidelines directly and adversely affect the sentence petitioner receives.

*Id.* at 2453–54.

To date, neither the Supreme Court nor the Eighth Circuit has directly addressed this *ex post facto* issue under the U.S. Sentencing Guidelines. *Cf. United States v. Wayne*, 903 F.2d 1188 (8th Cir.1990) (upholding application of the Guidelines on *ex post facto* challenge where acts of a drug conspiracy extended beyond effective date of Guidelines); *United States v. Allen*, 886 F.2d 143 (8th Cir.1989) (*id.*); *see also United States v. Sheffer*, 896 F.2d 842 (4th Cir.1990) (*id.*).

Several other circuit courts have been confronted with similar challenges and, when reaching the issue, have, in the absence of clear commentary by the Sentencing Commission indicating that an amendment was in fact a procedural change, found the *ex post facto* clause to have been violated. *See e.g. United States v. Torres*, 901 F.2d 205 (2d Cir.1990) (retroactive application of drug "super kingpin" provision violated *ex post facto* clause); *United States v. Suarez*, 911 F.2d 1016 (5th Cir. 1990) (retroactive application of new scienter requirement " 'would be an obvious ... violation' of the *ex post facto* clause.' " Citing *United States v. Woolford*, 896 F.2d 99, 102 n. 4 (5th Cir.1990)); *cf. United States v. Restrepo*, 903 F.2d 648 (9th Cir. 1990) (because comments in amendment to guideline effected only a procedural change no *ex post facto* violation occurred).

Two district courts have also entertained successful challenges to sentences based upon amendments to the Guidelines. In each case the court applied the version of the guideline which was valid at the time of

the offense rather than at the time of sentencing. *United States v. Graham,* 731 F.Supp. 944 (C.D.Cal.1990); *United States v. Landaw,* 733 F.Supp. 1256 (N.D.Ind. 1990).

The Court now finds that both prongs of the *ex post facto* analysis are unambiguously met in the instant case. The amended versions of Guideline §§ 2K2.1 and 2J1.7 are sought to be applied retroactively. Such an application presents a "disadvantage" to the defendant by more than doubling his term of imprisonment. The change "inserts a larger number into the same equation" and is substantive rather than procedural. *Miller, supra,* 107 S.Ct. at 2453. Defendant's sentence is thus properly calculated under the Guidelines valid at the time the offense was committed.

In harmony with the well established principle that "ambiguities in criminal statutes must be resolved in favor of lenity" *United States v. Batchelder,* 442 U.S 114, 121, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979), the Court will henceforth apply the more favorable guideline, be it the one valid at sentencing or at the time the offense is committed, the former because required by the Guidelines (and not prohibited by the Constitution) and the latter because required by the Constitution.

IT IS SO ORDERED.